UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, etc., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 09-CV-78 |
| ALLIANT ENERGY RESOURCES, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## ANSWER TO AMENDED COMPLAINT

The defendants, Alliant Energy Resources, Inc., now known as Alliant Energy Resources, LLC (hereinafter referred to as "Resources"), and Alliant Energy Corporation (hereinafter referred to as "Alliant"), for their answer to the amended complaint, allege as follows, denying any allegation not specifically admitted:

1.      Admit the allegations of paragraph 1.

2.      Admit that the allegations of paragraph 2 were correct as of the dates of filing of the original complaint and the amended complaint herein; allege further in this respect that, as of November 25, 2008, Alliant Energy Resources, Inc. was converted into a Wisconsin limited liability company known as Alliant Energy Resources, LLC, pursuant to a plan of conversion authorized by Wisconsin law and with the effects set forth in Wis. Stats. §§ 180.1161 and 183.1207; that the limited liability company has its principal place of business in Wisconsin; and that the sole member of the limited liability company is Alliant Energy Corporation.

3      Admit the allegations of paragraph 3, except allege that this defendant's correct name is Alliant Energy Corporation.

4.        Admit the allegations of paragraph 4.

5.        Deny the allegations of paragraph 5, alleging further in this respect that venue of this action was not proper in the District of Minnesota under 28 U.S.C.§ 1391 or otherwise, in that none of the criteria for proper venue in an action, like this one, in which jurisdiction is founded solely on diversity of citizenship, was satisfied, and in particular that (1) neither defendant resides in the District of Minnesota; (2) no part of the events or omissions said to give rise to the claim occurred in the District of Minnesota, nor is any property the subject of the action; and (3) there is a district in which the action may otherwise be brought, namely, this district, to which this action has now been transferred; treating the allegations of paragraph 5 as having been made with respect to the Western District of Wisconsin, admit them.

6.        Admit the allegations of paragraph 6.

7.        With respect to the allegations of paragraph 7, admit those in the first sentence; with respect to the allegations in the second sentence, admit that Resources has and has had several wholly-owned subsidiaries that operate non-regulated businesses, including electricity generation; with respect to the allegations of the third sentence, admit that Resources operates and has operated a variety of businesses, including two natural gas-fired power plants in Wisconsin, and that it provides environmental consulting, engineering, and renewable energy services, including design, engineering, and construction services for wind farms throughout the country, including in Minnesota; deny the allegation that Resources' investments other than non-regulated electricity generation are modest; admit that Resources operates transportation facilities and transfer and storage services, including a short line railroad and a barge terminal and hauling services; deny the allegation that Resources' "portfolio" was "once diversified" and the implication therein that it is not now diversified, alleging in this respect that its business is

2

diversified in a different way than it was in previous times; admit that the size of Resources'
aggregate businesses has shrunk over time as to the amount of total consolidated assets as well as
total consolidated debt, including by the sale of various overseas businesses and assets, but allege
that its current business mix is more profitable than prior mixes; deny the remaining allegations
of the paragraph.

    8.  Admit the allegations of paragraph 8, except allege that the proper names
of the entities referred to as Interstate Power & Light Co. and Corporate Services are Interstate
Power and Light Company and Alliant Energy Corporate Services, Inc., respectively, and further
allege that neither Interstate Power and Light Company nor Wisconsin Power and Light
Company has engaged in the generation, purchase, distribution, or sale of electricity or natural
gas in Illinois since 2007.

    9.  Admit the allegations of paragraph 9, except state that if, and to the extent
that, the plaintiff asserts that Minn. Stat. § 501B.16(4) authorizes the Court to afford the plaintiff
relief different from that available under 28 U.S.C. § 2201, deny the allegation, inasmuch as
(1) the defendants were not subject to jurisdiction in the courts of Minnesota, nor subject to the
enactments of its legislature and (2)  the parties, in § 10.09 of the Indenture, have chosen
Wisconsin law to "govern this Indenture, the Securities, and any action appertaining thereto."

    10.  With respect to the allegations of paragraph 10, admit those in the first two
sentences and deny the remaining allegations of the paragraph, alleging further in this respect
that the indenture described in paragraph 6 of the amended complaint as the "Indenture," and so
referred to herein, speaks for itself as to its contents.

    11.  With respect to the allegations of paragraph 11, admit those in the first
sentence; with respect to the allegations in the second sentence, admit that Resources was a non-

regulated business distinct from the operation of its parent and other regulated subsidiaries, except allege that a guaranty from its parent, Alliant, was necessary in order to sell the Notes, and deny the allegation that Resources was a "fast-growing, internationally focused" business when the Notes were issued, inasmuch as Resources had consolidated operating losses in each of the four years prior to the issuance of the Notes on February 1, 2000 (*i.e.*, 1996-99), and Resources' international assets constituted only $199.9 million of $1,848.6 million total consolidated assets as of December 31, 1999; admit the allegations in the third sentence, except deny any implication that the plan adopted was to sell "substantially all" of Resources' properties or assets generally to entities that are not organized in the United States, much less a plan to sell such properties or assets to "any person," within the meaning of § 5.01 of the Indenture; further deny that the plan was adopted in 2003, alleging further in this respect that Alliant's Board of Directors approved in November 2002 several strategic actions designed to maintain a strong credit profile for Alliant, to strengthen its balance sheet, and to position Alliant for improved long-term financial performance, one of which actions was to pursue the sales of a number of non-regulated businesses, including Resources' oil and gas (Whiting), Australian (including Southern Hydro), and affordable housing businesses and to strengthen Alliant's and Resources' liquidity position by reducing consolidated debt that had earlier maturities than the Notes and to increase cash as a result of these transactions; admit the allegations in the fourth sentence, except deny that Resources sold its interest in Alliant Energy New Zealand Ltd. (hereinafter referred to as "AENZ") for more than $300 million, alleging further in this respect that the net proceeds to Resources were only $186.5 million, because of post-closing purchase price adjustments and because Resources was obliged, in connection with the transaction, to repay a loan owed by

4

AENZ of approximately $100 million; further deny that Resources' other non-regulated investments are minor; deny the allegations in the last sentence of the paragraph.

12.     With respect to the allegations of paragraph 12, deny the allegations in the first sentence; with respect to the allegations in the second sentence, deny that Resources was a "fast-growing, internationally focused" business when it issued the Notes, for the reasons given in the answer to paragraph 11, above; deny the allegations in the third sentence, alleging further in this respect that Resources had marginal net income of $1.4 million in 2001 and net losses from each year from 2002 through 2005 and did not have net income until after the bulk of the asset sales referred to in the amended complaint were completed, with net income growing to $35.3 million in 2007 and $30.0 million for the first six months of 2008, prior to the filing of this action; deny the allegations in the last sentence of the paragraph.

13.     Admit the allegations of paragraph 13.

14.     Admit the allegations of paragraph 14.

15.     Admit the allegations of paragraph 15, except deny any implication that the plaintiff needed the consent of any of the holders of the Notes in order to execute the supplemental indenture tendered to it and deny any implication that the form of the supplemental indenture and related documents ultimately tendered to the plaintiff for execution were objectionable in any respect, alleging further in this respect that the defendants made the relatively minor changes to the documents suggested by the plaintiff's counsel.

16.     With respect to the allegations of paragraph 16, admit those in the first sentence, except state that they lack knowledge or information sufficient to form a belief about the truth of the allegation respecting the belief of the so-called "Majority Noteholders"; with respect to the allegations in the second sentence, state that they lack knowledge or information

5

sufficient to form a belief about the truth of any alleged direction to the plaintiff from the so-called Majority Noteholders, but deny that any such direction, if received, would excuse the plaintiff from performing its duty under the Indenture to execute the fifth supplemental indenture presented to it by the defendants; deny the allegations in the third sentence.

17.    Admit the allegations of paragraph 17.

18.    Admit the allegations of paragraph 18, except deny that the Notes were issued in November 1999, alleging further in this respect that they were issued on February 1, 2000.

19.    Admit the allegations of paragraph 19, alleging further in this respect that the Indenture speaks for itself as to its contents.

20.    Admit the allegations of paragraph 20, alleging further in this respect that the Indenture speaks for itself as to its contents; allege further in this respect that, effective November 25, 2008, Alliant assumed Resources' obligations under the Indenture, as permitted under §§ 2.18(a) and 5.05 thereof.

21.    With respect to the allegations of paragraph 21, admit those in the first two sentences, alleging further in this respect that the Indenture speaks for itself as to its contents; with respect to the allegations in the third sentence, admit that § 1.04 of the Indenture, entitled "Rules of Construction," provides that "Unless the context otherwise requires . . . (3) words in the singular include the plural, and words in the plural include the singular"; deny the allegation that "the word 'person' in Section 5.01 is to be construed to include the plural," because "the context otherwise requires" (salient words that the plaintiff omits in purporting to quote accurately from § 1.04); that is, the conveyance, transfer, or lease of "all or substantially all" of Resources' properties and assets "to any person," requiring assumption of all of Resources'

obligations under the Indenture and the Notes, was contemplated to be to a single entity (or related entities), and could not, as argued by the plaintiff, be satisfied by separate sales of a variety of properties and assets over a period of years to a number of different purchasers.

22.     With respect to the allegations of paragraph 22, admit those in the first sentence, except allege that the word "purchasers" used therein is incorrect, but must, in order to trigger § 5.01, be a "purchaser" of the assets in a single transaction, not many purchasers in separate sales of a variety of assets over a period of years to a number of different purchasers, as occurred with respect to Resources; deny the allegations in the second sentence.

23.     Admit the allegations of paragraph 23, alleging further in this respect that the Indenture speaks for itself as to its contents.

24.     Admit the allegations of paragraph 24, alleging further in this respect that the Indenture speaks for itself as to its contents.

25.     Admit the allegations of paragraph 25, alleging further in this respect that the Indenture speaks for itself as to its contents.

26.     With respect to the allegations of paragraph 26, admit those in the first sentence, except allege with respect to the allegation that Resources held certain assets "[n]ot long ago," that Resources sold certain assets in Australia on April 30, 2003, nearly six years ago; certain assets in Brazil on January 26, 2006, over three years ago; certain assets in China on various dates in 2005 and 2006, over two to three years ago; and certain assets in New Zealand on December 29, 2006, over two years ago; generally deny the allegations in the second sentence, noting that Resources had losses (excluding gains and losses on sales) from its Australia, Brazil, China, and New Zealand operations in the aggregate for every year from 1999 through 2005 (other than marginal profit in 2003), that prior to their sale in early 2006 Resources

had losses with respect to the Brazil operations of $15.7 million in 2000, $24.2 million in 2001, $46.7 million in 2002, $14.0 million in 2003, $11.3 million in 2004, and $199.0 million in 2005, and that, while the Australia, China, and New Zealand operations each fluctuated between providing Resources losses or marginal earnings during this time period, none of them individually contributed any significant amount to Resources' operating results, so that the allegation that these assets "represented valuable independent fast-growing businesses" is untrue.

27.    Admit the allegations of paragraph 27, alleging further in this respect that the documents from which the quotations are lifted speak for themselves as to their contents and that the plaintiff's selective omissions from some of the quoted documents mislead the reader as to the import of the original with respect to the emphasis given to foreign investments therein.

28.    With respect to the allegations of paragraph 28, admit those in the first sentence, but deny any implication that the plan adopted was a plan to sell "all or substantially all" of Resources' properties or assets, much less a plan to sell such properties or assets to "any person," within the meaning of § 5.01 of the Indenture; and further deny that the plan was initiated in 2003, alleging further in this respect that Alliant's Board of Directors approved in November 2002 several strategic actions designed to maintain a strong credit profile for Alliant, to strengthen its balance sheet, and to position Alliant for improved long-term financial performance, one of which actions was to pursue the sales of a number of non-regulated businesses, including Resources' oil and gas (Whiting), Australian (including Southern Hydro), and affordable housing businesses and to strengthen Alliant's and Resources' liquidity position by reducing consolidated debt that had earlier maturities than the Notes and to increase cash as a result of these transactions; deny the allegations in the second sentence, alleging further in this respect that the plaintiff's selective omission from and its false insertion of the word "Resources"

8

into the quoted document in a place where the original referred to Alliant mislead the reader as to

the import of the original, as is demonstrated by comparing the plaintiff's partial quotation:

> "the sole growth platform within [Resources'] updated strategic
> plan"

with the full language of that portion of the document:

> "Alliant Energy's domestic utility business is its core business and
> the sole growth platform within its updated strategic plan.  As a
> result, Alliant Energy views its domestic utility business as the
> area of its business that is expected to provide the larger share of
> its long-term earnings growth.  It will also be the area of the
> business that Alliant Energy will invest the bulk of its capital in
> during 2004 and 2005.  Alliant Energy's remaining non-regulated
> businesses will serve as ongoing business platforms.  Alliant
> Energy expects these businesses to contribute to its earnings
> growth, but to a lesser degree than its growth platform (i.e.,
> domestic utility business).";

admit the allegations in the third sentence, except allege that the net proceeds from the sale of

Southern Hydro were $232.1 million, with the purchaser assuming $127.6 million of debt, that

the net proceeds from the sale of stock of Whiting Petroleum Corporation were $273.9 million,

that the net proceeds from the sale of the Brazilian investments were $150.4 million, and that the

net proceeds from the sale of the China investments (which occurred in 2005 and 2006) were

$91.5 million, with the purchaser assuming $26.8 million of debt.

29.     With respect to the allegations of paragraph 29, admit those in the first

sentence, except allege that the net proceeds to Resources were only $186.5 million, because of

post-closing purchase price adjustments and because Resources was obliged, in connection with

the transaction, to repay a loan owed by AENZ of approximately $100 million; with respect to

the allegations in the second sentence, deny that AENZ had paid "significant cash dividends,"

alleging further in this respect that AENZ paid cash dividends in each of 1999 through 2003 that

in aggregate were only about $24 million, but did not pay any cash dividends in 2004, 2005, or 2006.

30.     Deny the allegations of paragraph 30, alleging further in this respect that, as of November 30, 2006, the last month end prior to the sale of AENZ, Resources' total consolidated assets were $770.0 million and, as of December 31, 2006, immediately after the sale, Resources' total consolidated assets were $606.5 million.

31.     Admit the allegations of paragraph 31, except allege that the net cash proceeds were $66.1 million, in addition to a note received from the purchaser for $5 million.

32.     With respect to the allegations of paragraph 32, deny the allegations in the first sentence, alleging further in this respect that the net proceeds were approximately $1 billion; admit the allegations in the second sentence.

33.     With respect to the allegations of paragraph 33, admit the allegations in the first sentence, except deny that Resources' other non-regulated investments are "minor" and further deny that the recorded value (net of project debt) of Resources' assets was approximately $216 million, inasmuch as Resources' total consolidated assets recorded on its financial statements as of June 30, 2008 (the last quarter end for which public filings were available prior to the plaintiff's filing of this action) were $555.9 million, with $68.1 million of project debt, resulting in a recorded value (net of project debt) of $487.8 million; deny the allegations in the second sentence; admit the allegations in the third sentence.

34.     Deny the allegations of paragraph 34, alleging further in this respect that Resources' business has always involved ownership of a variety of assets, the business mix of which was changing over time; indeed, the offering memorandum for the sale of the Notes disclosed that Resources had assets of $1,486.5 million as of September 30, 1999 (the last

quarterly financial statements available prior to issuance of the Notes), of which $818.2 million, or slightly over 55%, consisted of stock owned in McLeodUSA Incorporated (hereinafter referred to as "McLeod"), a domestic telecommunications company whose stock was publicly traded and in which Resources had a 12.1% interest; alleging further in this respect that thereafter Resources sold a small portion of its McLeod stock for proceeds of only approximately $24 million in 2000, after which McLeod twice filed for bankruptcy protection, with the result that by 2005 all of Resources' McLeod stock had become worthless, resulting in a significant decrease in Resources' assets not attributable to any sale of assets by Resources; alleging further in this respect that Resources was always starting up new businesses, including the non-regulated gas-fired electricity generating facilities referred to in paragraph 33 of the amended complaint, which Resources started years after it had entered into the Indenture.

35.    Admit the allegations of paragraph 35, except allege that the phrase rendered "much closer strategic tries" should be "much closer strategic ties," and allege further that the plaintiff has added emphasis to the 2006 Alliant earnings call that it purports to quote therein that was not in the original, without noting that fact; allege further that the plaintiff has selectively quoted from the 2004 Alliant earnings call that it purports to quote therein, omitting additional statements that make clear that Resources was not in the process of selling substantially all of its properties and assets, in particular the following statements:

> "Now let me hopefully anticipate and respond to the question that may be asked, which is -- does this mean you are exiting, or you are on a path to exit all of your non-regulated businesses?  The answer, as Bill indicated, is no.  But since this is an election year, let me add several qualifiers.  Let me be clear -- our domestic utility business continues to be our foundation, and it will be the primary target of our future capital investments.  But, our remaining non-regulated businesses will continue to be part of our ongoing business portfolio.  However, I would once again emphasize that management continues to evaluate the performance

of all of our businesses, both utility and non-regulated, and is focused on taking actions to increase the returns we are earning on our invested capital in all of our businesses."

36. Deny the allegations of paragraph 36.

37. Admit the allegations of paragraph 37, alleging further in this respect that the Indenture speaks for itself as to its contents.

38. Deny the allegations of paragraph 38.

39. Admit the allegations of paragraph 39, alleging further in this respect that the written communications referred to therein speak for themselves as to their contents.

40. Admit the allegations of paragraph 40, alleging further in this respect that the written communications referred to therein speak for themselves as to their contents; and denying any implication that the form of the supplemental indenture and related documents ultimately tendered to the plaintiff for execution were objectionable in any respect, alleging further in this respect that the defendants made all the relatively minor changes to the documents suggested by the plaintiff's counsel.

41. With respect to the allegations of paragraph 41, state that they lack knowledge or information sufficient to form a belief about the truth of those in the first two sentences; deny the allegations in the third sentence.

42. Admit the allegations of paragraph 42.

43. Deny the allegations of paragraph 43.

44. With respect to the allegations of paragraph 44, repeat, reallege, and incorporate herein by reference as if fully set forth, the allegations of paragraphs 1-13, 18-24, and 26-36 of this answer.

45. Admit the allegations of paragraph 45.

46.     Admit the allegations of paragraph 46, alleging further in this respect that the Indenture speaks for itself as to its contents.

47.     Deny the allegations of paragraph 47.

48.     With respect to the allegations of paragraph 48, admit the allegation in the first sentence that the plaintiff has given the defendants a notice of default; deny any implication from the balance of the allegations in the first sentence that the plaintiff acted properly in doing so; deny the allegations in the second sentence, alleging further in this respect that, even had there been a default by Resources as asserted in paragraph 47 of the amended complaint (and denied in paragraph 47 of this answer, above), it would not have continued for 90 days, as the Indenture requires before the Notes may be accelerated, because Alliant's timely assumption of Resources' obligations under the Indenture and the Notes on November 25, 2008 released Resources from any liabilities, obligations, or covenants under the Indenture and with respect to the Notes.

49.     Admit the allegations of paragraph 49.

50.     Deny the allegations of paragraph 50.

51.     Admit the allegations of paragraph 51.

52.     Deny the allegations of paragraph 52.

53.     With respect to the allegations of paragraph 53, repeat, reallege, and incorporate herein by reference as if fully set forth, the allegations of paragraphs 1-13, 18-24, and 26-36 of this answer.

54.     Admit the allegations of paragraph 54.

55.     Admit the allegations of paragraph 55, alleging further in this respect that the Indenture speaks for itself as to its contents.

56. Deny the allegations of paragraph 56.

57. With respect to the allegations of paragraph 57, admit the allegation in the first sentence that the plaintiff has given the defendants a notice of default; deny any implication from the balance of the allegations in the first sentence that the plaintiff acted properly in doing so; deny the allegations in the second sentence, alleging further in this respect that, even had there been a default by Resources as asserted in paragraph 47 of the amended complaint (and denied in paragraph 47 of this answer, above), it would not have continued for 90 days, as the Indenture requires before the Notes may be accelerated, because Alliant's timely assumption of Resources' obligations under the Indenture and the Notes on November 25, 2008 released Resources from any liabilities, obligations, or covenants under the Indenture and with respect to the Notes.

58. Admit the allegations of paragraph 58.

59. Deny the allegations of paragraph 59.

60. Admit the allegations of paragraph 60.

61. Deny the allegations of paragraph 61.

62. With respect to the allegations of paragraph 62, repeat, reallege, and incorporate herein by reference as if fully set forth, the allegations of paragraphs 1-43 of this answer.

63. Admit the allegations of paragraph 63.

64. Deny the allegations of paragraph 64, except state that they lack knowledge or information sufficient to form a belief about the truth of the allegation in the first sentence that the balance of the sentence is the plaintiff's own contention, particularly in light of the allegation in paragraph 41 of the amended complaint that the plaintiff is not forming

conclusions on its own but is acting pursuant to the direction of the so-called Majority Noteholders.

65.    Admit the allegations of paragraph 65.

66.    Admit the allegations of paragraph 66.

67.    Deny the allegations of paragraph 67.

**FIRST AFFIRMATIVE DEFENSE**

68.    The plaintiff's decisions to send a notice of default to the defendants, to bring this action against them, and to maintain it were not reasonable, because, even before Alliant assumed Resources' obligations under the Note, as hereinafter described, (a) no breaches of the Indenture had occurred, and (b) the alleged breaches of the Indenture would have been, even if they had occurred (which the defendants deny), at most immaterial covenant defaults that did not give rise to any financial exposure to nonpayment of the Notes, and this is particularly true since the occurrence of the said assumption, which substituted Alliant's direct obligation on the Notes for that of Resources.  Had the plaintiff executed the fifth supplement indenture and recognized the effectiveness of the assumption, this action would have been unnecessary.  Its refusal to do so is unreasonable and violates the plaintiff's duty to the defendants under the Indenture.

69.    Because the plaintiff's decisions to bring and maintain this action were not reasonable, it is not entitled under the Indenture or otherwise to any compensation for the expenses that it may have incurred or may hereafter incur in bringing and maintaining this action.

**SECOND AFFIRMATIVE DEFENSE**

70.    Repeat, reallege, and incorporate herein by reference as if fully set forth, the allegations of paragraphs 68-69 of this answer.

15

71.     The amended complaint fails to state a claim upon which relief can be granted for costs, disbursements, and attorneys' fees, beyond such statutory costs as may be allowable should the plaintiff prevail herein.

72.     Upon information and belief, the plaintiff has performed all the acts that it has performed with respect to the subject of this action, including bringing and maintaining this action, at the direction and behest and for the benefit of the so-called Majority Noteholders.

73.     Upon information and belief, those Noteholders have indemnified the plaintiff and agreed to hold it harmless for liabilities and expenses incurred with respect to such acts, including for its attorneys' fees incurred in connection with this action, and the plaintiff has satisfied itself as to the sufficiency of such indemnification and hold-harmless agreement.

74.     Unless the plaintiff prevails in this action, it is not entitled to any award of expenses, including attorneys' fees, from the defendants.

### THIRD AFFIRMATIVE DEFENSE

75.     All the sales of properties and assets of Resources which are the subject of this action were publicly reported by the defendants in contemporaneous press releases and in timely public filings with the Securities and Exchange Commission, copies of which filings the defendants delivered to the Trustee at or about the time thereof.  Indeed, Alliant's initial plan to dispose of certain assets (inaccurately referred to in paragraph 28 of the amended complaint), which it adopted in November 2002, was itself widely so reported at that time.  Thereafter, Alliant provided updates to that plan to the public on a quarterly basis through its earnings releases, investor and financial analyst conference calls (such as those referred to in paragraph 35 of the amended complaint), and public filings with the Securities and Exchange Commission.

76.     Upon information and belief, the plaintiff and the so-called Majority Noteholders at whose direction it is maintaining this action and who are financing its prosecution

16

(or their predecessors as Noteholders, whose knowledge is attributable to them) knew, or reasonably should have known, of all the occurrences about which plaintiff now complains at or about the time when those occurrences occurred (which times are accurately set out in paragraph 89, below).

77.     The plaintiff and the so-called Majority Noteholders (or their predecessors, whose knowledge is attributable to them) also knew from Alliant's periodic certifications to the plaintiff of the absence of defaults under the Indenture (see § 4.08 thereof, referred to in paragraph 25 of the amended complaint) that the defendants did not consider Resources' sales of properties and assets to constitute a default as a transfer of substantially all of the properties and assets of Resources.

78.     The plaintiff nevertheless failed even to initiate contact with the defendants concerning the asset sales by Resources, concerning any claim that any such sales over a four-year period constituted a transfer of substantially all of the properties and assets of Resources, or concerning the alleged defaults that are the subject of this action until August 2008, and did not commence this action until September 2008.

79.     The failure of the plaintiff or its directing Noteholders to take earlier action, including to assert (if they in fact believed it) that any or all of the asset sales over the course of the period 2003 to 2007 constituted a transfer of substantially all of the properties and assets of Resources, or to object to any of those asset sales, precludes the plaintiff's recovery herein under applicable principles of waiver, estoppel, and laches.

## FOURTH AFFIRMATIVE DEFENSE

80.     If, and to the extent that, Counts 1 and 2 of their counterclaim, below, are properly designated affirmative defenses, the defendants assert them as such.

17

## COUNTERCLAIM

For their counterclaim against the plaintiff, the defendants allege as follows:

81.    This counterclaim arises out of the transaction or occurrence that is the subject matter of the claims asserted by the plaintiff against the defendants in its amended complaint, namely, the plaintiff's contentions that

> (a)    Resources' sales of certain assets in separate transactions over a period of years to a number of different purchasers, taken together, or alternatively, the last of such sales, constituted the sale of "all or substantially all of its properties and assets to any person," within the meaning of § 5.01 of the Indenture;

> (b)    Such sales were a default under the Indenture, entitling the plaintiff, upon the continuation of the default for 90 days after notice, to declare the Note immediately due and payable as to Resources as principal obligor and Alliant as guarantor; and

> (c)    The default continued despite Alliant's assumption of Resources' obligations under the Note, pursuant to §§ 2.18 and 5.05 of the Indenture, effective November 25, 2008, before the end of the 90-day period.

82.    This Court already has jurisdiction of this action, by reason of the diversity of citizenship between the plaintiff and the defendants and the existence of the requisite amount in controversy, and this counterclaim needs no new jurisdictional support.

83.    The defendants incorporate into each count of this counterclaim the two preceding paragraphs, their first and second affirmative defenses, all admitted allegations of the amended complaint, and each allegation of every other such count.

## COUNT 1

84.    The Notes were issued on February 1, 2000 and mature on February 15, 2030.  The Notes provided that interest would be paid quarterly at a rate of 7.25% per year through February 15, 2003 and thereafter at a rate of 2.50% per year.  The reason for the relatively low interest rate beginning after February 15, 2003 was that holders of the Notes had

the potential to receive more than the $67.75 per Note original principal amount, because a feature of the Notes was that each holder had the option, at any time, to exchange a Note for cash equal to 95% of the then-market value of 0.8772 shares of McLeod stock. On January 26, 2000, the closing market price of McLeod stock was $67.75. But during 2000, and thereafter, the market price of McLeod stock steadily declined, with McLeod eventually filing for bankruptcy twice and McLeod stock becoming worthless by 2005. So, in this manner, the exchange feature of the Notes came to have no value, and the Notes became merely 2.50% notes that would not mature until 2030.

85.    In the years immediately preceding the issuance of the Notes, Resources' business operated at a net loss. In each of 1996, 1997, and 1998, Resources had both operating losses and net losses. In 1999, Resources also had an operating loss, although it showed positive net income solely as a result of the sale that year of a portion of its stock in McLeod. The McLeod stock, which represented Resources' largest single asset at the time that the Notes were issued, had a carrying value to Resources of $1,123.8 million (as of December 31, 1999), representing approximately 60% of Resources' total consolidated assets of $1,848.6 million.

86.    Thus, at the time of the issuance of the Notes, Resources' business could not fairly be characterized (as the plaintiff has described it in paragraph 11 of the amended complaint) as "fast-growing."

87.    At the same time, Resources' total consolidated assets (as of December 31, 1999) were $1,848.6 million, of which $1,648.7 million were domestic and about $199.9 million were international. Thus, at the time of the issuance of the Notes, Resources' business could not fairly be characterized (as the plaintiff has described it in paragraph 11 of the amended complaint) as "internationally focused."

19

88.    Even three years after issuance of the Notes, at the end of 2002, before any of the sales referred to in the amended complaint, Resources' total consolidated assets were about $2,263 million, about $1,308 million of which were domestic and about $955 million of which were foreign, and its operating results for foreign investments for 2000 through 2002 were decidedly negative, amounting to a total net loss to Resources over those years of almost $60 million.

89.    The sales of properties and assets of Resources referred to in the amended complaint (paragraphs 28, 29, and 31) may accurately be categorized as follows:

| Date | Asset Description | Buyer | Net Proceeds |
|------|-------------------|-------|--------------|
| April 2003 | Southern Hydro (Australia) | Meridian Energy, Ltd. | $232.1 million |
| November 2003 – November 2004 | Whiting Petroleum Corp. | Public (IPO) | $273.9 million |
| January 2006 | Various Brazilian Investments | Sobrapar Ltda. | $150.4 million |
| 2005 - 2006 | Various Chinese Investments | Banpu plc and others | $91.5 million |
| December 2006 | AENZ | Infratil, Ltd. | $186.5 million |
| June 2007 | Laguna del Mar Resort | Salvago Mexico | $66.1 million + $5 million note |

90.    All of these sales were to different, unrelated buyers.

91.    After the last of these sales, and at the time this action was commenced, Resources still retained over $550 million in total consolidated assets.  Much of the reduction in the value of Resources' assets after the issuance of the Notes on February 1, 2000 had nothing to do with the sales of these assets, but rather with the loss of value of the stock investment in McLeod, which had a carrying value to Resources of approximately $1.3 billion as of January 31, 2000, immediately prior to the issuance of the Notes, but which, by reason of McLeod's bankruptcy, had become worthless by 2005.

92.    Thus, Resources has at no single time, or even over time, transferred "all or substantially all of its properties and assets to any person," within the meaning of the relevant provision of the Indenture, nor even to different persons.

93.    The sales of these assets enabled Resources to achieve profitability. Resources had marginal net income of $1.4 million in 2001 and net losses for each year from 2002 through 2005 and did not have net income until after the bulk of the asset sales referred to in the amended complaint were completed, with net income growing to $35.3 million in 2007 and $30.0 million for the first six months of 2008, prior to the filing of this action.

94.    The profitability achieved by virtue of, among other things, the sales of these assets, made it less likely that a payment default would occur under the Notes and, accordingly, made the Notes more, rather than less, likely to be paid by Resources.

95.    Resources used the net proceeds of the sales of these assets to retire outstanding consolidated indebtedness of Resources, reducing it from about $1.9 billion at the end of 2002, before the first of the sales referred to in the amended complaint (whose dates and amounts are accurately set out in paragraph 89, above), to about $471 million as of June 30, 2008, before this action was commenced.  The retired debt had earlier maturity dates than the Notes.

96.    The reduction of debt with earlier maturity dates than the Notes achieved by virtue of, among other things, the sales of these assets, left significant value in excess of outstanding indebtedness and made it less likely that a payment default would occur under the Notes and, accordingly, made the Notes more, rather than less, likely to be paid by Resources.

97.    The defendants are entitled to a declaration that Resources has not breached the Indenture by virtue of the asset sales that are the subject of the amended complaint, or any of them.

### COUNT 2

98.    Although the sales of the properties and assets referred to in the amended complaint did not breach the Indenture, under § 5.01 or otherwise, the plaintiff nevertheless, on September 4, 2008, sent the defendants notice of a supposed default by reason of these asset sales.

99.    Under § 6.01 of the Indenture, the giving of such a notice was a condition precedent to the occurrence of an "Event of Default" under the Indenture with respect to the Notes and to the plaintiff's ability to accelerate the Notes.  After the giving of such a notice, no Event of Default would occur, nor could the Notes be accelerated, unless any alleged default continued for at least 90 days.

100.    Alliant is a utility holding company that had total consolidated assets of $7.4 billion and a positive net worth of $2.7 billion as of June 30, 2008, shortly prior to the commencement of this action.  Pursuant to §§ 2.18 and 5.05 of the Indenture, Alliant, which had guaranteed the Notes, reserved the flexibility to assume them directly at any time, without the consent of the Noteholders, and thereby to cause Resources to be released from any liabilities, obligations, or covenants under the Indenture and with respect to the Notes.

101.    Following receipt of the notice of default from the plaintiff, and within the 90 days permitted before any alleged default can become an Event of Default permitting the Notes to be accelerated, Alliant assumed the Notes, thereby preventing any alleged default by virtue of Resources' asset sales that are the subject of this action from continuing, so that any such alleged default could not and did not become an Event of Default under the Indenture.

22

102.    The defendants timely tendered to the plaintiff for execution, as required by the Indenture, a fifth supplemental indenture that recognized the fact of the assumption, along with certificates and opinions of counsel contemplated under the Indenture.  Without valid excuse, the plaintiff failed and refused to perform the ministerial act of executing the fifth supplemental indenture.

103.    The defendants are entitled to a declaration that Alliant has validly assumed the obligations of Resources under the Indenture and with respect to the Notes and that Resources has thereby been released from any liabilities, obligations, or covenants under the Indenture and with respect to the Notes.

104.    The defendants are entitled to a mandatory injunction compelling the plaintiff to execute the fifth supplemental indenture, recognizing such assumption.

## COUNT 3

105.    The defendants incorporate by reference herein paragraphs 68, 69, 72, and 73 of its affirmative defenses, above.

106. The defendants are entitled to a declaration that the plaintiff is not entitled to recover its costs and expenses, including disbursements and attorneys' fees, with respect to this action, from the defendants.

WHEREFORE, the defendants demand judgment in their favor and against the plaintiff, as follows:

1.    Dismissing the amended complaint and this action upon their merits and with prejudice;

2.    Declaring that Resources has not breached the Indenture by virtue of the asset sales that are the subject of the amended complaint, or any of them, and that no default has occurred under the Indenture, that no Event of Default has occurred under the Indenture, and that

23

the plaintiff does not have the right to declare the principal amount of the Notes or any accrued and unpaid interest immediately due and owing;

3.     Declaring that Alliant has validly assumed the obligations to Resources under the Indenture and that Resources has thereby been released from any liabilities, obligations, or covenants under the Indenture and with respect to the Notes;

4.     Mandatorily enjoining the plaintiff to execute the Fifth Supplemental Indenture, recognizing such assumption;

5.     Declaring that the plaintiff is not entitled to recover its costs and expenses, including disbursements and attorneys' fees, with respect to this action, from the defendants, either as an award in this action or otherwise;

6.     For its costs and disbursements of this action; and

7.     For such other and further relief as shall be just and equitable.

Dated:   February 3, 2009

<div style="margin-left:40%">

/s/ Thomas L. Shriner, Jr.
Thomas L. Shriner, Jr.
G. Michael Halfenger
Brian P. Keenan
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306
414-271-2400
414-297-4900 (facsimile)
tshriner@foley.com
mhalfenger@foley.com
bkeenan@foley.com
Attorneys for the Defendants

</div>

24